## O'HARRA v. LITTLEJOHN et al.

### Civil Action No. 37570.

District Court of the United States for the District of Columbia.

Dec. 19, 1946.

H. Stewart McDonald and Francis C. Brooke, both of Washington, D. C., for plaintiff.

John F. Sonnett, Asst. Atty. Gen., and George Morris Fay, U. S. Atty., of Washington, D. C. (J. Francis Hayden, Sp. Asst. to Atty. Gen., and Philip B. Kurland, Atty., Department of Justice, of Washington, D. C., of counsel), for defendants Littlejohn, Krug, Gardner, and Johnson.

Richard L. Merrick, of Washington, D. C., for defendants Veterans Alaska Cooperative Co. and Steve Larsson Homer.

LETTS, Justice.

The plaintiff is a resident of Anchorage, Alaska, and is a veteran as defined by the Surplus Property Act of 1944, as amended, 50 U.S.C.A.Appendix, § 1611 et seq.

The defendant Robert M. Littlejohn is Administrator of War Assets Administration. The defendant Julius A. Krug is Secretary of the Interior. The defendant Warner Gardner is Assistant Secretary of the Interior. The defendant Fred W. Johnson is Acting Director of the Bureau of Land Management of the Department of the Interior. The defendant Veterans Alaska Cooperative Company is a corpora-

tion organized under the laws of the Territory of Alaska. The defendant Steve Larsson Homer, a resident of Alaska, is a veteran as defined by the Surplus Property Act of 1944, as amended.

This is an action to enjoin the defendants Littlejohn, Krug, Gardner, and Johnson from transferring property designated as the Chilkoot Barracks Project to the defendants Homer or Veterans' Alaska Cooperative Company (hereinafter referred to as Veterans,) and to order the transfer of this property to the plaintiff.

The Chilkoot Barracks Project is an Army post in Alaska, title to which and possession of which is in the United States. The post has been declared surplus by the War Department. That part of the post area with which we are concerned consists of some 400 acres on Chilkat Peninsula, about a mile south of Haines and about 85 miles north of Juneau. On this post are some 60 permanent buildings and 10 temporary buildings, including barracks, hospital quarters, officers quarters, and such other construction as is usually to be found on an army post. It is no longer in use by the War Department because of the construction of larger and more efficient military establishments in the area. When in use, however, Chilkoot Barracks had a normal complement of some 400 men; at capacity, it accommodated approximately 1200 troops. Its acquisition cost, less depreciation, was $992,065. The Department of the Interior, named as the disposal agent for this property by the War Assets Administration, set a price of $100,000 on the post area with improvements, and $5,000 on the water system included in the area. When the City of Haines rejected the offer of the water system, it was included in the sale parcel.

The property was advertised for sale beginning March 27, 1946. Priority offers were to be filed by 10 A.M. on June 26, 1946. Three bids were filed by veterans. The plaintiff's bid was filed some hours after the deadline, but the defect was waived. One of the bidders withdrew, leaving only the plaintiff and the defendant Homer, as trustee for the Veterans. The Department decided, without hearings, that both were entitled to veteran's prefer-

ence and ordered a drawing at Anchorage, Alaska, to determine which should prevail. 58 Stat. 778, § 23(f), 50 U.S.C.A.Appendix, § 1632(f); W.A.A. Reg. 5, § 8305.12(k). The plaintiff's name was selected at the public drawing. The defendants, both before and after the drawing, protested the award to O'Harra. The Department of the Interior referred them to the War Assets Administration. The Bureau of Review of the War Assets Administration held a hearing to consider these protests on August 14, 1946. The plaintiff was not represented at hearing. But the Board of Review decided nothing other than to refer it to the Department of the Interior for a full hearing on the issues raised. The authorization for the hearing provided that both the plaintiff and the defendants were to be given an opportunity to be heard. The issues were framed in the letter of authorization from General Littlejohn, thus:

"That the criterion for the eligibility of each of the claimants for a veteran's priority in bidding for this property shall be: Have the claimants demonstrated to the satisfaction of the disposal agency that they actually intended and are equipped, in fact, to use all of the property for their own small business, agricultural or residential purposes—rather than utilize part thereof for speculative purposes?"

If O'Harra met this test, he was to receive the property; if he did not and Veterans did, it should receive the award.

Hearings pursuant to this directive were held before Assistant Secretary of the Interior Gardner on September 16 and September 19. Although O'Harra appeared and was heard at both hearings, he was not represented by counsel at the first. His counsel, however, after examining the transcript of the first day's hearings stated: "We are very satisfied with the way the proceedings went on Monday, and we have no objections." Veterans and Homer were represented at both hearings by counsel.

On September 26, 1946, Assistant Secretary Gardner handed down an opinion in which he stated that though the plaintiff intended to use all the property for his own business, he was not engaged in a

"small business," as that term is used in the statute and regulations. He also held that Veterans fulfilled all the requirements and that Chilkoot Barracks should be transferred to Veterans. An appeal to Mr. Secretary Krug was dismissed on October 3, 1946, and on October 12, 1946, the War Assets Administrator denied an appeal. On October 29, 1946, Assistant Secretary Gardner issued an opinion on reconsideration, adhering to the position he stated in his original opinion.

On November 4, 1946, the plaintiff filed a complaint in this court asking for the relief indicated above. On the same day he requested a temporary restraining order to prevent the defendants Littlejohn, Krug, Gardner, and Johnson from conveying the property to the defendants Homer and Veterans. Although none of the defendants had been served, and no service has yet been made, they had been notified that the application for a restraining order was to be made and they appeared at the hearing. The order was granted on condition that the plaintiff post security of $10,000. The security has been posted.

The parties have agreed that the motion on behalf of the defendants Littlejohn, Krug, Gardner, and Johnson for a dismissal of the suit for lack of jurisdiction or for summary judgment, would be heard at the same time as plaintiff's motion for a temporary injunction.

■ This suit cannot be maintained. To grant the relief sought would require an order for the transfer of properties, the entire title and interest in which is in the United States. The immunity of the sovereign has not been waived. The suit is in effect and in reality one against the United States, since any judgment rendered would necessarily be one against the United States. Minnesota v. Hitchcock, 185 U.S. 373, 22 S.Ct. 650, 46 L.Ed. 954; Louisiana v. McAdoo, 234 U.S. 627, 34 S. Ct. 938, 58 L.Ed. 1506; Goldberg v. Daniels, 231 U.S. 218, 34 S.Ct. 84, 58 L.Ed. 191.

■ The court is powerless to restrain the United States from transferring its properties to Homer or Veterans and may not compel the transfer of the properties to plaintiff. The court cannot issue either of the requested mandates. To do so would require a judgment against the United States, which the court is without jurisdiction to enter. The United States is an indispensable party to any suit where it is sought to establish or acquire an interest in lands which it owns. Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235. In Minnesota v. Hitchcock, supra, the Supreme Court considered the precise jurisdictional question which is present in the suit at bar. It was sought to prevent the Secretary of the Interior from selling certain lands to which the State laid claim and to establish the right of the State to the land. The court held that such an action was necessarily a suit against the United States. At page 387 of 185 U.S., at page 655 of 22 S.Ct. it was said:

"Now, the legal title to these lands is in the United States. The officers named as defendants have no interest in the lands or the proceeds thereof. The United States is proposing to sell them. This suit seeks to restrain the United States from such sale, to divest the government of its title and to vest it in the state. The United States is therefore the real party affected by the judgment and against which in fact it will operate, and the officers have no pecuniary interest in the matter."

An examination of the opinion in Goldberg v. Daniels, supra, is enlightening and persuasive. The doctrine of that case has been accepted by the Court of Appeals for the District of Columbia, and has been consistently followed by that court. International Trading Corp. v. Edison, 71 App.D.C. 210, 109 F.2d 825; Haskins Bros. & Co. v. Morgenthau, 66 App.D.C. 178, 85 F.2d 677; Farley v. Albus, 72 App. D.C. 136, 112 F.2d 401.

■ Turning then to another aspect of the case it is noticed that the statute does not define the term "small business"; such failure was not inadvertent. The legislative history clearly shows that the definition of such term was left to the disposal agency. It was left to the sound judgment and wise discretion of persons charged with the ad-

ministration of the law to give the term "small business" its proper and appropriate meaning, having in mind what Congress sought to do to protect independent private enterprise. It was not enough that plaintiff's name was drawn. It was essential that he should qualify in other respects. The evidence strongly supports the findings announced by Assistant Secretary Gardner. He found that O'Harra, prior to incorporation, had a capitalization of $200,000, to be increased to $450,000 on the sale of the stock; that his gross income for recent years was about $200,000 per year; that he was employing 58 employees, and would employ approximately 110, should he be successful in securing the Chilkoot Barracks Project; that he owns about 36 busses; that he owns bus depots in six cities, and garages in four; that he owns two apartment houses; that the facilities owned by him at Gulkana included 18 buildings, at White River, 20 buildings; that except for very short runs, he has little competition in Alaska; that he owns three times as many busses as all of those of his competitors combined.

It is clear that Assistant Secretary Gardner had in mind the declared objectives of the statute. The evidence is voluminous. Extensive hearings were had. It was found that O'Harra's enterprise failed to qualify as a "small business". The evidence amply supports such conclusion. It is clear that plaintiff dominates bus transportation in Alaska, and that, for Alaska, his enterprise is a large business. The type of criteria which Assistant Secretary Gardner tried was clearly the type which Congress considered important to achieve the objectives of the statute.

The Assistant Secretary was on firm ground in holding that Veterans have qualified for priority in their bid for the properties; the evidence reveals that there is sound basis for such conclusion. He found that Veterans was a corporation, the membership of which was composed of some 40 veterans or representatives of veterans; that its proposed capitalization is about $350,000; that the Veterans will function as an administrative body; that the members of Veterans will own and operate their own mercantile, industrial and professional enterprises, which will be aided by Veterans' financing. He found that Veterans does not and will not in the foreseeable future be dominant in any field of business in Alaska. Further, a grant of the property to Veterans will effectuate the policies specifically expressed by the statute. It will strengthen and preserve the competitive position of small business concerns; it will afford returning veterans an opportunity to establish themselves as proprietors of agricultural business, and professional enterprises; it will effect an equitable distribution of surplus property; and it will foster the development of new independent enterprises.

The matter of determining the eligibility of plaintiff and of Veterans was within the sound discretion of the disposal agency. The record shows such discretion was exercised with much care. It cannot be said that there was an abuse of discretion or that the denial of plaintiff's eligibility and the affirmance of Veterans' eligibility was in any wise arbitrary or capricious. The exercise of discretion was reasonable in the facts and circumstances of the case.

It follows that the motion of plaintiff for a temporary injunction must be overruled and the motion of defendants to dismiss the complaint should be sustained.

Counsel for defendants will present an appropriate order consistent herewith.